IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRIGINA (ABINGDON)

| | |
|---|---|
| KIRA FERGUSON, *individually and as Executrix of the Estate William S. Ferguson, Deceased* -and- SHANNON FERGUSON, *in her own right*,<br><br>*Plaintiffs*,<br><br>v.<br><br>SUSAN DOONAN BIELSKI,<br><br>*Defendant.* | NO: 1:23-cv-00032-JPJ-PMS |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

**COMES NOW** Plaintiffs, Kira Ferguson, individually and as the Executrix of the Estate of William of William S. Ferguson, Deceased, and Shannon Ferguson, in her own right, by and through counsel, hereby files this Complaint and in support thereof states as follows:

### THE PARTIES

1. Plaintiff, Kira Ferguson, is the biological daughter and Executrix of her late father's estate, William S. Ferguson, Deceased, and resides in the Commonwealth of Virginia.

2. Plaintiff, Shannon Ferguson, is likewise the biological daughter of the Decedent, William S. Ferguson, and resides in the Commonwealth of Pennsylvania.

3. Defendant, Susan Doonan Bielski Blackwell, is the stepdaughter of the decedent, William S. Ferguson, by and through his marriage to Joyce Doonan, who preceded him in death.

4. At all times material hereto, Defendant, Susan Doonan Bielski Blackwell, resides in the state of New Hampshire and owns an interest in real property in Virginia.

### JURISDICTION AND VENUE

5. This court has jurisdiction of this case under 28 U.S.C. §1332(a) [Diversity] and personal jurisdiction over defendant under Virginia's Long Arm Statute, waiver by counsel, and ownership of real property in Va.

6. This matter stems from the untimely death of Mr. William Ferguson, a vulnerable person, who took his own life, on October 14, 2021, with the assistance, provocation, and participation and gross neglect of Defendant, Susan Doonan Blackwell, in Wythe County, Virginia.

7. Plaintiff, Kira Ferguson, as of the filing of this Complaint, serves as the Executrix for William S. Ferguson's Estate, in Wythe County, Virginia.

8. At all times relevant hereto the Estate of William Ferguson consists of various real properties located in Wythe County, Virginia, and is a part of the Estate at issue in this matter.

9. Defendant Susan Blackwell has a beneficiary interest in real property and personal property of the deceased within the Commonwealth of Virginia.

10. At all times material hereto, Defendant stayed with Decedent William Ferguson in the family home in Virginia for four (4) days immediately prior to his suicide where she voluntarily assumed the role of responsible person of a vulnerable adult Decedent, William Ferguson, overseeing his overall well-being to include his care, custody and control.

**FACTUAL BACKGROUND**

11. The Decedents, William S. Ferguson and Joyce Doonan, were married and lived as husband and wife for approximately thirty (30) years and resided in Wytheville, Virginia.

12. At the time of their union, both William and Joyce had children from previous marriages.

13. The Decedent, Joyce Doonan, had two biological daughters, Sandy Doonan and Susan Doonan Blackwell.

14. Defendant, Susan Doonan Blackwell, lived in and was educated in New England at various boarding schools, during college and through law school.

15. William Ferguson's biological daughters are Kira Ferguson and Shannon Ferguson, Plaintiffs in this matter.

16. The Decedent, William S. Ferguson, was able to acquire various properties, which included a mobile home park, garages, storage units, horse farm, as well as a residence that sits on thirty-two (32) acres of land. All such assets are believed to be in Wythe County, Virginia.

17. Joyce Doonan, mother of Defendant, graduated from medical school, and ultimately, became an anesthesiologist working in and around Wytheville, Virginia, for over twenty (20) years.

18. Together, the decedents, Joyce, and William, were able to build a comfortable life for themselves and amassed an Estate worth approximately $2,500,000.00.

19. Unfortunately, on January 27, 2021, Joyce Doonan passed unexpectedly, thereby leaving Mr. William Ferguson her entire share of the estate.

20. The current Last Will and Testament dated February 24, 2021, directed that all assets be sold, with the proceeds to be divided as follows: Sandra Doonan 30%, Susan Doonan Bielski (Blackwell) 30%, Kira Ferguson 20% and Shannon Ferguson 20%.

21. Additionally, the Last Will and Testament appointed Sandy Doonan to serve as the Executrix of the Estate, however, Sandy Doonan relinquished her right so serve as Executrix to Kira Ferguson.

22. Mr. Ferguson's last wishes specified that if Sandra was unable or unwilling to serve, Kira Ferguson was to then be appointed in her place.

23. In the months following his wife's death, Mr. Ferguson fought with depression. Mr. Ferguson struggled to cope with the recent death of his wife and his own health problems.

24. Medical records show that on September 9, 2021, Mr. Ferguson went to his family doctor at Forrest Family Clinic for a depression screening.

25. The results of the screening showed that Mr. Ferguson was moderately depressed and having suicidal ideations.

26. It was at this visit that his family doctor diagnosed Decedent with severe depression and suggested that he should be admitted to a psychiatric hospital for admission.

27. However, Mr. Ferguson declined, and the doctor called the Wythe Crisis Center for guidance and was told that the patient can come immediately for crisis intervention.

28. It is uncertain as to whether he went to the Wythe Crisis Center.

29. During his visit with his family doctor, he was prescribed an antidepressant.

30. In addition to being depressed over the loss of his wife, Mr. Ferguson was battling physical health concerns that included kidney problems and partial blockage of his carotid artery.

31. On September 13, 2021, Mr. Ferguson suffered a stroke. Although it was not completely debilitating, Mr. Ferguson still experienced residual effects. Most significantly, he became physically weaker, which increased his risk of falling.

32. During Mr. Ferguson's hospitalization, the doctor discussed the blockages to his carotid arteries. The physicians at Roanoke Memorial Hospital opined that they did not believe that Mr. Ferguson was a good surgical candidate due to his renal issues and, thus, were reluctant to address and/or treat the blockages at this facility.

33. Shortly after his discharge from Roanoke Memorial, Mr. Ferguson's daughter, Kira Ferguson, decided to reach out to the hospital at the University of Pennsylvania in Philadelphia.

34. After speaking with a doctor at the Hospital, both Kira and Mr. Ferguson were encouraged that a surgeon at the University of Pennsylvania would be able to perform the necessary operation to unblock his arteries, even with the underlying issues leading Mr. Ferguson to make plans to go to Philadelphia with his daughter, Kira.

35. Mr. Ferguson's more optimistic outlook post-surgery rekindled his interest in modifying race cars and racing them himself.

36. In fact, Mr. Ferguson asked his long-time racing partner to finish building a car that he now planned to race.

37. Delivery of said car occurred September 26, 2021, and led to Mr. Ferguson personally test driving it.

38. Despite this new hopefulness, Mr. Ferguson still struggled to cope with the death of his wife, as well as his own mental and physical health issues, with friends noting that he still seemed sad.

39. He continued to make plans to go to the hospital of the University of Pennsylvania for care.

40. On October 11, 2021, Defendant, Susan Doonan Blackwell, came to Virginia unexpectedly.

41. At that time, another family member named Perry was scheduled to take Mr. Ferguson to Pennsylvania for his medical appointments.

42. Defendant asserted that she was going to take Mr. Ferguson to Pennsylvania, causing Perry to cancel his plans to do so.

43. The expectation was that on October 14, 2021, Mr. Ferguson would travel to Pennsylvania and, once there, he would be admitted to the Hospital of the University of Pennsylvania for evaluation and treatment of his blockages.

44. This trip never occurred.

45. In the four (4) days that Defendant spent alone with Mr. Ferguson prior to the trip, she initiated and sustained a systematic effort to encourage his suicide.

46. Home surveillance and other evidence has led Plaintiffs to believe that Defendant spent the four days reinforcing Mr. Ferguson's fears that he had nothing to live for.

47. On the morning of October 14, 2021, Defendant took her mother's ashes and began spreading them under a tree on the property that her mother and Mr. Ferguson used to sit under together.

48. Plaintiffs believe that this act on Defendant's part drove Mr. Ferguson to a new emotional low.

49. Shortly after Defendant and decedent scattered the ashes, Ferguson took his life.

50. The in-home camera system shows Mr. Ferguson crying on the kitchen table approximately an hour and a half before his suicide. Susan was aware of his extremely fragile emotional state but did not take any preventative steps to safeguard his well-being.

51. The in-home camera system also shows Defendant's active encouragement in Mr. Ferguson's preparation of his suicide note, moments before he took his life going so far as to helping him spell out the word "*a-r-r-a-n-g-e-m-e-n-t-*s."

52. Upon information and belief, Defendant became specifically aware that he intended to harm himself, directed how and where he should shoot himself ("*not in the head… or… in the house*").

53. Two plastic lawn chairs in the yard were arranged a few feet away from the spot where Defendant had spread her mother's ashes.

54. Upon finishing his suicide note, the video shows that Mr. Ferguson prepared the checks for his funeral arrangements, and then retrieved his .380 Ruger and began loading the weapon.

55. Once loaded, Mr. Ferguson's walked outside to the area where the Defendant had arranged the chairs. The video shows Defendant walking outside to the same area several seconds later.

56. Mr. Ferguson's dog was locked in Mr. Ferguson's office which faced the yard where he eventually shot himself.

57. Defendant took up the seat next to Mr. Ferguson a few feet away.

58. Mr. Fergson aimed the gun at his chest and pulled the trigger while Defendant sat and watched.

59. After Mr. Ferguson shot himself, he did not die instantly but, instead, suffered profoundly.

60. Defendant took no immediate steps to render any aid or call 911 for help.

61. Instead, she went to seek out a neighbor down the road, at which time she finally called 911 at the neighbor's immediate insistence. Ferguson was bleeding out all the while this was going on.

62. The neighbor came over to Mr. Ferguson's house and began to try to help Mr. Fergson by applying a towel to the wound to try to stop the bleeding.

63. According to the neighbor, Defendant did not appear to move with the haste that the circumstances warranted.

64. The Defendant gives a self-serving statement to the police upon their arrival on scene.

65. It should also be noted that Defendant did not call Plaintiffs Shannon and Kira to inform them of what was happening. It was a neighbor who ultimately called Plaintiff Kira Fergusion who was in Philadelphia, Pennsylvania waiting for Defendant to bring her father to Pennsylvania.

66. Defendant, upon Plaintiffs' information and belief, waited only two hours before she contacted the attorney who wrote Mr. Ferguson's will requesting a "**reading of the will**" to find out what her share of the Estate would be.

67. Defendant continued to press the attorney numerous times inquiring about the Estate and wanted an immediate reading of the Will.

68. Due to the numerous insistent calls from Susan, a formal reading of the will took place in the attorney's office the very next day at approximately 3:00 pm.

69. Defendant neglected Mr. Ferguson in his fragile emotional, mental, and physical state, and that neglect resulted in his death.

70. Decedent William Ferguson was an impaired, vulnerable person due to his physical illness, and mental illness.

71. In this diminished state, Decedent William Ferguson did not have the ability to make reasonable decisions concerning his well-being which substantially impaired his ability to safeguard his person.

72. Defendant's primary concern was with her own enrichment from this tragic event.

73. Sadly, Mr. Ferguson's dog may have witnessed the entire event, with footage showing the dog wailing as Mr. Ferguson shot himself.

74. To add insult to injury, Defendant took the dog home with her.

## COUNT I - INJUNCTIVE RELIEF

75. Plaintiffs incorporate by reference paragraphs 1 through 74 as if fully set forth herein.

76. Defendant took an active role in facilitating Mr. Ferguson's suicide. In-home footage of the suicide corroborates this fact.

77. Virginia Code § 8.01-622.1(a) states that:

*"Any person who knowingly and intentionally, with the purpose of assisting another person to commit or attempt to commit suicide, (i) provides the physical means by which another person commits or attempts to commit suicide or (ii) participates in a physical act by which another person commits or attempts to commit suicide shall be liable for damages as provided in this section and may be enjoined from such acts."*

78. Defendant knowingly and intentionally assisted Mr. Ferguson to commit suicide.

79. Additionally, the same statute states that:

*(c) A spouse, parent, child, or sibling of a person who commits or attempts to commit suicide may recover compensatory and punitive damages in a civil action from any person who provided the physical means for the suicide or attempted suicide or who participated in a physical act by which the other person committed or attempted to commit suicide.*

*See* VA Code Ann. § 8.01-622.1(c).

80. Plaintiffs, as the biological children Decedent, William Ferguson, are deprived of their father's love and companionship due to the callous actions and conduct of Defendant, Susan Doonan Blackwell, who preyed on his depression and health concerns for her own personal financial benefit.

81. Defendant had direct and personal knowledge of Mr. Ferguson's mental state and unsound mind but took no steps to contact friends, relatives, or others in order to help avoid his suicide.

82. Defendant's conduct was tantamount to "grooming" Mr. Ferguson to believe that suicide was the only path to ending his depression, his physical and mental anguish.

83. Defendant, an attorney by trade who placed herself in the role of a caregiver and responsible person to a vulnerable person, who clearly had a diminished state of mind, had a duty to protect and safeguard Decedent, William Ferguson.

84. Defendant did not try to reach out for help from any professional, or organization to assist her stepfather in his suicidal depression.

85. Defendant did not even call her stepsisters, Kira, and Shannon, Mr. Ferguson's biological daughters, to alert them that Mr. Ferguson was expressing suicidal ideations.

86. Defendant oversaw all aspects of Mr. Ferguson's suicide, and aided him in the writing of his suicide note, selecting the location where he would eventually kill himself (spreading her mother's ashes there), arranging two plastic lawn chairs next to one another, to only sit down in one to wait for Mr. Ferguson to pull the trigger, and to then render no substantive aid as he lay dying on the ground. She ran away to a neighbor's house.

87. Defendant stood to personally profit from this conduct as an heir to the Estate, a fact that she knew or should have known at the time she was directly or indirectly orchestrating this tragedy.

88. Mr. Ferguson is survived by certain beneficiaries who have sustained financial, personal and pecuniary loss as a result of the death of their father,

89. It is the rule of law of the Commonwealth of Virginia to prevent one who has participated in the willful and unlawful killing of another from profiting by her wrong.

90. Susan did not disconnect a physical life saving device such as a breathing machine or a feeding tube or oxygen tube or alter a pacemaker, but she disconnected his most important lifesaving device…. his mind.

91. For that disconnect, Susan should be disconnected from the assets of the estate.

92. Injunction is a proper equitable remedy to protect the pending distribution of property of the estate and plaintiffs from dissipation by Defendant who participated in wanton and willful physical acts, mental acts and omissions by which Ferguson committed suicide.

**WHEREFORE,** Plaintiffs Kira Ferguson and Shannon Ferguson demands judgment in their favor, against Susan Doonan Blackwell, together with cost and attorney's fees.

## COUNT II-WRONGFUL DEATH

93. Plaintiffs incorporate by reference paragraphs 1 through 92 as if fully set forth herein.

94. The death of Will Ferguson was caused by the wrongful neglect and defaults of Defendant Susan Doonan Bielski Blackwell who assumed the role of caretaker of a vulnerable person and failed at that function.

95. Defendant's conduct as a caretaker of the person of Mr. Ferguson was willful and wanton and demonstrated a complete and total disregard for the wellbeing of Mr. Ferguson such that he suffered death.

96. Defendant as responsible person to a vulnerable adult, Susan owed Mr. Ferguson a duty of reasonable and appropriate care given her awareness of his ongoing mental anguish and suicidal ideations along with his physical maladies.

97. Defendant's encouraging and/or allowing Mr. Ferguson to commit suicide, along with her related actions and omissions regarding her responsibilities as caretaker, were a breach of this important duty.

98. But for Defendant's conduct, Mr. Ferguson would have likely continued to live.

99. Had Mr. Ferguson survived, he would have had his own claim again Defendant in this matter due to the above duty, breach of that duty, and the causal proximate connection leading directly to his demise.

**WHEREFORE,** Plaintiffs Kira Ferguson and Shannon Ferguson demands judgment in their favor, against Susan Doonan Blackwell, together with cost and attorney's fees.

## COUNT III - UNJUST ENRICHMENT

100. Plaintiffs incorporate by reference paragraphs 1through 99 as if fully set forth therein.

101. Virginia law enumerates that one person may not enrich herself at the expense of another person.

102. Defendant has enriched herself at the expense of the estate and plaintiffs in that she drove to Virginia, became the responsible caretaker of Will Ferguson, a vulnerable person, by participating in his care, custody and control then willfully and wantonly abandoning those responsibilities leading to his untimely death.

103. As a consequence of those actions, the Defendant should not receive a share of the estate.

104. Plaintiff, Kira Ferguson, has given some of the estate monies to the Defendant already, yet the Defendant is demanding additional monies through her filings with the state court.

105. Defendant is aware that monies were given to her, and additional monies would be potentially due her because she listened to a reading of the Will on the day after the death.

106. Defendant accepted the benefit monies of the estate under circumstances as enumerated which render those monies and that interest inequitable given the wanton and willful conduct of the Defendant.

107. Monies would not have been distributed to the Defendant if facts now available were known to the Executrix.

108. Defendant has created a diminution of the Estate and the lives of the Plaintiffs.

109. Defendant Susan Doonan Bielski Blackwell should be prevented from profiting from her egregious wrong to the person of Will Ferguson.

110. The Defendant Susan Doonan Bielski, drove down to Virginia and five (5) days later, she drove home potentially $750,000.00 richer with the dog.

**WHEREFORE,** Plaintiffs Kira Ferguson and Shannon Ferguson demands judgment in their favor, against Susan Doonan Blackwell, together with cost and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

A. Enter judgment against Defendant for compensatory damages in the amount of not less than $2,500,000.00, or such other amount as shall be proven at trial, with prejudgment interest as applicable.

B. Enter judgment against Defendant for punitive damages in the amount of $8,000,000.00.

C. Enjoin Defendant from receiving any portion of the Estate of William S. Ferguson.

D. Impose constructive trust over any real or personal property Defendant in entitled to pursuant to the terms of the last Will and Testament of William S. Ferguson, Deceased.

E. Name the remaining heirs, pursuant to the Last Will and Testament of William S. Ferguson, as the sole beneficiaries of the trust.

F. Divide Defendant's share of the Estate, once in trust, evenly between the remaining heirs and/or beneficiaries pursuant to the Will and constructive trust.

G. For an award of attorney's fees and costs from Defendant as a result of her violation of Virginia law and the need for Plaintiffs to prosecute this matter.

H. For any other relief appropriate under the circumstances including punitive damages,

Respectfully submitted,

/s/ *Mary L. Tate*
Mary Lynn Tate, Esq. (VSB # 16085)
**Tate Law PC**
P.O. Box 807
211 W. Main St.
Abingdon, VA 24212
Phone: (276) 628-5185
Fax: (276) 628-5045
Email: mltate@tatelaw.com

-and-

Gerard K. Schrom, Esquire  
**Schrom, Shaffer & Botel, P.C.**  
4 West Front Street  
Media, PA 19063  
Phone: (610) 565-5050  
Fax: (610) 565-2980  
Email: gschrom@schromandshaffer.com  
*Co-Counsel for Plaintiffs*

**DATED: March 19, 2024**

## Certificate of Service

I hereby certify that on this 22nd day of March, 2024, a copy of the foregoing First Amended Complaint was filed ECF, sent via electronic mail for filing and service on counsel for Defendant.

/s/ Mary Lynn Tate

Mary Lynn Tate

Tate Law PC

P. O. Box 807

211 West Main St.

Abingdon, Virginia 24212

276-628-5185

Fax 276-628-5045

mltate@tatelaw.com   cell 276-608-9185

Counsel for Plaintiffs