| | |
|---|---|
| KIRA FERGUSON, individually and as Executrix of the ESTATE OF WILLIAM S. FERGUSON, DECEASED, and SHANNON FERGUSON, in her own right, | |
| Plaintiffs, | Civil Action No. 1:23-cv-00032 |
| v. | |
| SUSAN DOONAN BLACKWELL, | |
| Defendant, | |

**DEFENDANT SUSAN DOONAN BLACKWELL'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant Susan Doonan Blackwell ("Blackwell"), by counsel, hereby moves this Court under Federal Rules of Civil Procedure Rule 12(b)(2), and respectfully submits this motion to dismiss for lack of personal jurisdiction, because Blackwell is not a resident of Virginia and has not engaged in any action that would permit this Court to exercise specific personal jurisdiction over her. In support thereof, Blackwell states as follows:

**INTRODUCTION**

This Court neither has general personal jurisdiction over Blackwell because she is a citizen of New Hampshire, nor does this Court have specific personal jurisdiction over her. Plaintiffs' Amended Complaint asserts three potential bases for specific jurisdiction: (1) the commission of a tort in Virginia, (2) ownership of real property in Virginia, and (3) waiver by counsel. Plaintiffs cannot meet their burden of proof to establish jurisdiction under any of the proffered theories.

Plaintiffs' contention that Blackwell engaged in tortious activity that caused injury – namely, wrongful death – in Virginia fails as a matter of law. Of course, any exercise of jurisdiction

premised on the commission of a tort creates a chicken-and-egg conundrum: the Court must have personal jurisdiction over Blackwell before it can decide the ultimate question of whether Blackwell committed a tort in Virginia. Courts resolve this circularity problem by requiring the plaintiff to meet her burden of proof and present <u>evidence</u> -- not mere allegations -- showing that the nonresident defendant purposefully availed herself of this jurisdiction in order to survive a jurisdictional challenge.

Here, Plaintiffs cannot show that Blackwell has engaged in any tortious act in Virginia. The allegations in the Complaint simply do not meet the elements of any tort recognized by Virginia law. Plaintiffs cannot adequately plead – much less prove – that Blackwell <u>owed a duty</u> to Mr. Ferguson to prevent him from committing suicide, as she was not a medical professional. Nor can Plaintiffs show that Blackwell <u>breached</u> that duty: the only allegations are words taken out-of-context, but the statute cited by Plaintiffs makes clear that words without tortious actions are insufficient to state a claim. Likewise, Plaintiffs cannot show that Blackwell's actions <u>caused</u> Mr. Ferguson's death; the allegations clearly state that Mr. Ferguson made a conscious decision to voluntarily end his own life. Even if Plaintiffs satisfied these elements, Mr. Ferguson's voluntary actions still constitute a superseding/intervening event and, notably, an illegal one. Under either circumstance, Plaintiffs' claim fails.

Plaintiffs' second theory – the ownership of an interest in real property – fails for both factual and legal reasons. First, Plaintiffs' assertion that "Blackwell has a beneficiary interest in real property within the Commonwealth of Virginia" is false. Am. Compl. ¶ 9. Blackwell does not own any property in Virginia. She has an interest in the Estate of William Ferguson as provided by his Last Will and Testament ("the Will"). However, the Will did not provide her with an interest in real property. Instead, the Will directed the executor "to sell said property" and divide the

proceeds among the heirs. Blackwell has an interest in the liquidated proceeds from the sale of the property, not the real property itself.

Even if Blackwell does have an interest in real property, it is not a valid basis for personal jurisdiction because it arose after the events alleged in the Amended Complaint. For the Court to have specific jurisdiction, Plaintiffs must prove that their claims <u>arise out</u> of the activities ostensibly directed at the commonwealth. Plaintiffs' allegations in the Amended Complaint and the purported nexus to the commonwealth are not related and therefore the claims do not arise out of that nexus.

While Plaintiffs do not elaborate upon their claim that Blackwell waived any objection to personal jurisdiction, it is subject to the same temporal problem. Assuming Plaintiffs are attempting to argue that Blackwell's participation in another lawsuit constitutes waiver – an argument that Plaintiffs have completely failed to support in the Amended Complaint – that argument fails because the claims must arise out of the nexus to Virginia. This alleged connection to Virginia arose <u>after</u> the claims identified in the Amended Complaint and therefore, the claims asserted in the Amended Complaint could not possibly arise out of this connection.

Even if Plaintiffs could show that Blackwell fell within the long arm statute, Plaintiffs would still fail to meet the additional constitutional elements required for this Court to exercise specific jurisdiction. Namely, Plaintiffs must show that Blackwell purposefully availed herself of this jurisdiction's privileges and that it would be constitutionally reasonable for the Court to exercise jurisdiction over Blackwell. Plaintiffs have the burden of showing by a preponderance of the evidence that Blackwell engaged in activity in Virginia sufficient to constitute "purposeful availment." Plaintiffs have, at most, identified facts showing that Blackwell briefly came to Virginia to visit her ailing and grieving stepfather who, hours before she was to transport him to Philadelphia, committed suicide within her sight. As Plaintiffs concede, the purpose of Blackwell's

visit was to transport Mr. Ferguson out of the commonwealth, not to avail herself of the privileges of conducting activities in the commonwealth.

Accordingly, this case should be dismissed for lack of personal jurisdiction.

<u>**BACKGROUND**</u>

This case arises out of the tragic death of William S. Ferguson, the biological father of the Plaintiffs and the stepfather of Blackwell. Mr. Ferguson married Joyce Doonan, MD, a local physician and Blackwell's mother, in 1988. After 33 years of marriage, Dr. Joyce Doonan died suddenly in January 2021, leaving Mr. Ferguson heartbroken. Am. Compl. ¶ 19. In the months following Dr. Doonan's death, Mr. Ferguson – a 75-year-old, two-time survivor of cancer with multiple co-morbid diagnoses – began to experience a decline in his physical and mental health. *Id.* at ¶¶ 23-32.

In September 2021, physicians at Roanoke Memorial Hospital informed Mr. Ferguson that his carotid arteries were 100% blocked and, due to his co-morbidities, he was not a candidate for the life-saving surgery that would be required to unblock his arteries. *See id.* at ¶ 32; *see also* Text Messages, p. 3, attached as **Exhibit A**. Kira Ferguson sought a second opinion from physicians in Philadelphia and scheduled an initial evaluation for Mr. Ferguson in October 2021. Am. Compl. ¶¶ 33-34; Text Messages, pp. 3-4. Blackwell offered to drive nearly 850 miles from her home in New Hampshire to her stepfather's home in Wytheville, stay with her stepfather for four days, and then transport him to Philadelphia for that appointment. Text Messages, pp. 2-4; *Cf.* Am. Compl. ¶ 40 (falsely alleging Blackwell "came to Virginia unexpectedly"). The purpose of Blackwell's visit to Virginia was clear: take Mr. Ferguson out of the commonwealth so he could obtain a second medical opinion. At the time, Kira Ferguson believed Mr. Ferguson was of sufficiently sound mind to control his own medical decisions. *Id.* Kira Ferguson expressed her gratitude to Blackwell for looking after Mr. Ferguson and agreeing to take him to Philadelphia. *Id.* at p. 4 ("Thank you for

bringing him [to Pennsylvania] and going to see him sooner"); *Id.* at pp. 6-7 ("it's beyond appreciation that [you] are there and bring[ing] him here.")

While in Virginia, Blackwell and Mr. Ferguson spent time walking around the family farm and spreading Dr. Doonan's ashes. Am. Compl. ¶ 47; Text Messages, p. 2. Due to the risk of a proposed medical procedure and his declining health, Mr. Ferguson also asked Blackwell to assist with pre-surgery arrangements, such as creating an inventory of his Estate. Throughout Blackwell's stay, Kira Ferguson and Blackwell remained in communication about the status of Mr. Ferguson's health and the planned trip to Philadelphia. Text Messages, pp. 2-6 ("[Mr. Ferguson] is still having episodes of weakness every day, I would have been willing to go tomorrow but he isn't in a hurry and isn't yet packed.")

Before that trip could occur and less than a year after Dr. Doonan's death, Mr. Ferguson died by suicide, to the surprise of all members of the family. Kira Ferguson, Mr. Ferguson's youngest child, was distraught. Text Messages, pp. 7-8 ("It hurts me that it wasn't me with him [when he committed suicide]. I feel betrayed and abandoned and forgotten"). Her grief led to anger and denial, lashing out at Blackwell and smashing photographs of Dr. Doonan, leaving Blackwell to clean up the broken glass. *Id.* at pp. 10-11 ("I'm really sorry about the mess, I needed to [do] that. I knew it wouldn't hurt the photos and now you can pack them up. I want nothing but his photos alone"). Even in the throes of grief, Kira Ferguson knew that Blackwell did not encourage Mr. Ferguson to commit suicide. *See id.* ("Q: You think I asked him to shoot himself right in front of me?? A: No that's not what I'm saying. I don't think that at all. I just am so [upset]. I just need time to process my brother committed suicide[;] my daddy[;] they left me[.] I just need time to grieve[.] I'm so angry at him for what he did[.] he was selfish"). As the family worked through the

aftermath of Mr. Ferguson's tragic suicide, Kira helped Blackwell prepare Mr. Ferguson's dog, Tia, for the trip to New Hampshire.[1]

Before he died, Mr. Ferguson made conscious decisions about how his estate (which included the assets of Dr. Doonan after her death) should be divided. Mr. Ferguson's decisions about how to divide his estate were clearly set forth in his Last Will and Testament. A copy of the Last Will and Testament is attached as **Exhibit B**. The parties are engaged in a separate litigation about Mr. Ferguson's Last Will and Testament: *Susan Doonan Bielski and Sandra B. Doonan v. Kira Ferguson, Executrix for the Estate of William Sandrel Ferguson*, Wythe County Circuit Court Civil Case No. CWF21-240-00.[2]

After Mr. Ferguson's death, Kira Ferguson was hurt by her father's decision to provide Blackwell and her biological sister, Sandra Doonan, with a greater share of his Estate (30% each) than was given to his biological children, Kira and Shannon Ferguson (20% each). Kira Ferguson perceived that decision as a slight, turning her grief into anger. She became determined to get a greater share of the Estate, even if it meant asserting false allegations against Blackwell in an attempt to overrule her father's express decisions about how to divide his Estate.

On August 18, 2023, Plaintiffs filed a Complaint in the Circuit Court for Wythe County. Plaintiffs seek damages alleging Blackwell caused Mr. Ferguson to commit suicide. Compl. ¶¶ 73-92. Additionally, Plaintiffs seek to enjoin Blackwell from "receiving any portion of the Estate of William S. Ferguson". Compl. ¶ 21; Prayer for Relief, C.

---

[1] Plaintiffs assert "[t]o add insult to injury, Defendant took the dog [Tia] home with her." Am. Compl. ¶ 74. Plaintiffs' contemporaneous communications contradict that allegation. *See* Ex. A ("I'm happy to hear Tia is doing well") p. 23, ("I'm happy if she is happy") p. 22, ("I got Tia a harness" to use in New Hampshire), p. 12, ("She will need coats and sweaters for sure. It's much colder there") p.21.

[2] Any question about the division of Mr. Ferguson's estate should be resolved in the underlying probate matter, not here. However, the Court can and should consider the Last Will and Testament as the plain language of the Will defeats Plaintiffs' claim that Blackwell owns property in the commonwealth.

On September 19, 2023, Blackwell timely filed her Notice of Removal, due to complete diversity of the parties and the amount in controversy exceeding $75,000. On September 20, 2023, the matter was removed from the Circuit Court for Wythe County to the United States District Court for the Western District of Virginia, Abingdon Division.

Blackwell moved to dismiss the initial Complaint for lack of personal jurisdiction. In response, Plaintiffs filed the Amended Complaint. None of the core allegations change the fundamental fact that Blackwell is not a Virginia resident. Because there is no nexus between Virginia and the claims asserted in the Amended Complaint, Plaintiffs cannot show Blackwell has purposefully availed herself of the privileges of the commonwealth and therefore, Plaintiffs cannot establish specific personal jurisdiction.

## LEGAL STANDARD

Before a court can hear a matter, the plaintiff must establish that the court has personal jurisdiction over a defendant. This is accomplished in one of two ways. First, a court may have general jurisdiction over a defendant if the defendant resides within that court's jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."). Alternatively, a plaintiff may establish specific personal jurisdiction over a defendant by first showing "whether the applicable state law will permit the exercise of long-arm jurisdiction over the defendant." *Alton v. Wang*, 941 F. Supp. 66, 67 (W.D. Va. 1996). Second, Plaintiffs must show the continuation of the suit in the jurisdiction is consistent with traditional notions of fair play and substantial justice. *RCI Contrs. & Eng'rs, Inc. v. Joe Rainero Tile Co*., 666 F. Supp. 2d 621, 623 (quoting *Int'l Shoe Co. v Wash.*, 326 U.S. 310, 320 (1945)).

The Court then applies a three-part test to determine whether specific personal jurisdiction has been established. The test considers "(1) the extent to which the defendant 'purposefully

availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *RCI Contrs.*, 666 F. Supp 2d at 623 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

Once a defendant challenges a court's personal jurisdiction, the plaintiff bears the "burden to establish that personal jurisdiction exists over the out-of-state defendant." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002); *See also Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (Once challenged, plaintiff bears "the burden of demonstrating personal jurisdiction at every stage following such a challenge.") "In response to a defendant's challenge to personal jurisdiction, a plaintiff is required to make a *prima facie* showing that jurisdiction over the defendant is proper." *James v. Subaru of Am., Inc.*, 433 F. Supp. 3d 933, 938 (W.D. Va. 2020) (citing *Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 226 (4th Cir. 2019)). Unlike motions under Rule 12(b)(6), which look only to the sufficiency of the pleadings, after a jurisdictional challenge the parties are "given the opportunity to present all relevant evidence and argument to the court regarding personal jurisdiction" at which point "'the plaintiff must carry the burden to establish personal jurisdiction by a preponderance of the evidence.'" *Id.* (quoting *Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 197 (4th Cir. 2018)).

## ARGUMENT

### I.    This Court Does Not Have General Jurisdiction Over Blackwell

As an initial matter, there is no general jurisdiction over Blackwell. Courts only have general jurisdiction over those domiciled within that jurisdiction. *See Goodyear Dunlop Tires Operations, S.A.,* 564 U.S. at 924. Blackwell is a citizen of New Hampshire. Am. Compl. ¶ 4. General jurisdiction can also be established when a "defendant has unrelated, general contacts with the forum state that can be characterized as 'continuous and systematic.'" *Boyd v. Green*, 496 F.

Supp. 2d 691, 700 (W.D. Va. 2007). Plaintiffs' Amended Complaint alleges Blackwell's only contacts with the commonwealth to be an unexpected visit for four days. Am. Compl. ¶¶ 40, 45.[3] This visit is insufficient to establish "continuous and systematic" contact. Accordingly, this Court does not have general jurisdiction over Blackwell.

At this point, the analysis shifts to whether Plaintiffs can meet their burden of establishing a *prima facie* case against Blackwell and, if so, whether Plaintiffs can produce sufficient evidence to meet their burden of "establish[ing] personal jurisdiction by a preponderance of the evidence." *James*, *supra*, 433 F. Supp. 3d at 938. Unless Plaintiffs can state a *prima facie* claim and produce actual evidence to establish jurisdiction, the case must be dismissed. As set out below, Plaintiffs cannot meet this standard. Indeed, Plaintiffs cannot even show the *prima facie* case necessary for them to claim an entitlement to jurisdictional discovery.

## II. This Court Does Not Have Specific Jurisdiction Over Blackwell.

Plaintiffs cannot establish specific jurisdiction over Blackwell. As a non-resident defendant, Plaintiffs must establish two elements. First, Plaintiffs must show "whether the applicable state law will permit the exercise of long-arm jurisdiction over the defendant." *Alton v. Wang*, 941 F. Supp. 66, 67 (W.D. Va. 1996). Second, Plaintiffs must show the continuation of the suit in the United States District Court for the Western District of Virginia is consistent with traditional notions of fair play and substantial justice. *RCI Contrs.*, 666 F. Supp. 2d at 623 (quoting *Int'l Shoe Co. v Wash.*, 326 U.S. 310, 320 (1945)).

---

[3] Plaintiffs also incorrectly assert that Blackwell owns real property in Virginia and based upon that assertion, argue that the Court has specific jurisdiction over Blackwell. Blackwell addresses this below in Section II(C).

**A.     Virginia's Long Arm Statute**

There is no statutory basis for the Court to exercise jurisdiction over Blackwell. Virginia's long arm statute, Va. Code § 8.01-328.1, provides a court may exercise personal jurisdiction over an individual "[c]ausing tortious injury by an act or omission in this Commonwealth" or who has an interest in real property in the commonwealth. Plaintiffs fail to establish how Virginia's long-arm statute authorizes the exercise of personal jurisdiction over Blackwell. The barren conclusions are legally and factually insufficient to meet Plaintiffs' burden under either theory.

**B.     Plaintiffs Cannot Show Blackwell Purposefully Availed Herself of Virginia Law by Engaging in Tortious Activity.**

Plaintiffs cannot establish jurisdiction based upon the alleged commission of a tort. To maintain a cause of action for wrongful death, Virginia requires "(1) the death of a 'person' caused by a wrongful act, neglect or default, etc., and (2) that the act, negligent or default be 'such as would, if the death had not ensued, have entitled the injured party to maintain an action for personal injuries.'" *Lawrence v. Craven Tire Co.*, 210 Va. 138, 140 (1969).  The elements in a negligence claim include (1) a duty owed by Defendant, (2) a duty breached by Defendant, (3) a proximate cause, and (4) an injury.  *Richardson v. Lovvorn*, 199 Va. 688, 692 (1958).

The Complaint alleges that Blackwell wrongfully caused the death of Mr. Ferguson, Blackwell's stepfather, by encouraging Mr. Ferguson's suicide.  Am. Compl. ¶¶ 45-48, 50-52. Blackwell vigorously disputes these offensive (and implausible) allegations, but the Court need not reach the facts because these allegations fail to state a legally cognizable claim. Plaintiffs cannot establish that Blackwell owed Mr. Ferguson a duty of care, that she breached that duty of care, or that her alleged actions caused his death. But even if Plaintiffs could meet their burden of proving each of these elements by a preponderance of the evidence, Plaintiffs' claims still fail because Virginia does not recognize a personal injury claim based upon words alone.  As such,

Plaintiffs cannot meet their burden of establishing that Blackwell purposefully availed herself of this jurisdiction by engaging in tortious activity here.

### i. Blackwell Did Not Owe a Duty of Care

Blackwell did not owe a duty of care to Mr. Ferguson. *See Quisenberry v. Record No. 171494 Huntington Ingalls, Inc.*, 296 Va. 233, 241 (2018) ("Without a legal duty there can be no cause of action for an injury"). It is axiomatic that a person does not owe a duty to the world at large. *Dudley v. Offender Aid & Restoration, Inc.*, 241 Va. 270, 277, 401 S.E.2d 878, 882 (1991) ("A man is entitled to be as negligent as he pleases towards the whole world if he owes no duty to them") (citation omitted). While some courts have recognized a duty to prevent a specific plaintiff from committing suicide, those cases are limited to narrow circumstances where hospitals and physicians undertake a duty to protect patients from self-inflicting injury when there is "knowledge of the patient's mental state and prior suicide attempts." *Blankenship v. Commercial Distribs.*, 16 Va. Cir. 168, 170 (Cir. Ct. 1989); *see also Commercial Distribs., Inc. Blankenship*, 240 Va. 382, 391, 397 S.E.2d 840, 845 (1990) ("Ordinarily, only a qualified health care professional can determine whether a patient's illness has progressed to the point where hospitalization is warranted"). Here, Plaintiffs allege Blackwell owed a duty of reasonable care to Mr. Ferguson because she was an attorney. Am. Compl. ¶ 83. No court has ever recognized such a duty that would conflate the roles of doctors and lawyers. A legal education, no matter how valuable, is inadequate to prepare attorneys to undertake such a duty.

### ii. Blackwell Did Not Breach Her Duty of Care

Blackwell did not breach any duty to Mr. Ferguson. Plaintiffs' Amended Complaint alleges that Blackwell "oversaw all aspects of Mr. Ferguson's suicide[.]" Am. Compl. ¶ 86. But Plaintiffs do not identify any <u>actions</u> that Blackwell took to cause Mr. Ferguson's death. At most, Plaintiffs allege Blackwell told Mr. Ferguson how to spell the word "arrangements" and then

placed two chairs near a tree where she and Mr. Ferguson then spread her mother's ashes. *Id.* As noted below, at Section II(B)(v), words alone are insufficient to rise to the level of breach.

But even if words were sufficient to state a claim, Plaintiffs' Amended Complaint does not plausibly assert that Blackwell encouraged her stepfather to commit suicide. From four days' worth of security footage, Plaintiffs have cherry picked two statements and then stripped them of context to mislead the Court. Am. Compl. ¶¶ 51-52. Even without context, the inferences that Plaintiffs ask the Court to draw are facially unreasonable: no reasonable person would believe that Blackwell spreading her mother's ashes with her stepfather was an act intended to drive her stepfather to suicide. Yet that is the implausible inference Plaintiffs' Amended Complaint would require the Court to draw.

What the allegations reveal instead is that Blackwell visited her ailing stepfather and planned to take him to Pennsylvania to see a doctor about an invasive and risky medical procedure. During that visit, and in anticipation of the inherent risks of undergoing invasive coronary angioplasty, a procedure that involves a balloon catheter to open blocked blood vessels into the heart, Blackwell assisted her stepfather in making pre-surgery arrangements that included creating an inventory of his Estate. No reasonable person would construe such benign and prudent Estate planning as "encouraging" suicide, and certainly not sufficient to rise to the level of breaching a duty to Mr. Ferguson.

To the extent the Court needs to review the evidence to hear all specific statements in context, the Court may order jurisdictional discovery.[4]

---

[4] Should the Court do so, it will become apparent that Plaintiffs have knowingly made numerous false allegations in the Amended Complaint. *See, e.g.,* Am. Compl. ¶ 40 (Plaintiffs were aware of and agreed that Blackwell would be visiting Mr. Ferguson in Virginia and taking him to Pennsylvania) and ¶ 74 (Plaintiffs were aware of and agreed that Blackwell would take the dog home with her).

### iii.     *Blackwell Did Not Cause Mr. Ferguson's Death*

Blackwell's alleged actions did not cause Mr. Ferguson's demise. As alleged, Mr. Ferguson caused his own tragic death. Plaintiffs' Amended Complaint alleges that Mr. Ferguson "retrieved his .380 Ruger and began loading the weapon." Am. Compl. ¶ 54.  The Amended Complaint alleges that Mr. Ferguson "aimed the gun at his chest and pulled the trigger." Am. Compl. ¶ 58. While Plaintiffs conclude that Mr. Ferguson was "an impaired, vulnerable person[,]" the allegations in the Amended Complaint describe someone who, in the face of a terminal illness, made a conscious and tragic decision to end his life by suicide.[5] The Supreme Court of Virginia used the Webster's Third New International Dictionary 2286 (1981) to define suicide as "the deliberate and intentional destruction of his own life by a person of years of discretion and of sound mind." *See Wackwitz v. Roy*, 244 Va. 60, 65 (1992). Accordingly, Blackwell was not the proximate cause of Mr. Ferguson's death.

### iv.     *Mr. Ferguson's Actions Cut off the Chain of Causation*

Even if Blackwell did contribute to the causal chain of events, Mr. Ferguson's intentional act constitutes an intervening or superseding act that cut off the chain of causation.  *See Scheffer v. R.R. Co.*, 105 U.S. 249, 252 (1881) (finding suicide as an intervening cause for the deceased's demise after he was injured in a railroad collision).

Further, suicide remains an illegal activity in Virginia. In *Wackwitz,* the Supreme Court of Virginia stated, "as a general rule, 'a party who consents to and participated in an immoral or illegal act cannot recover damages from other participants for the consequences of that act.'" *Wackwitz*, 244 Va. at 64.  There is no criminal punishment for suicide in the Commonwealth, but suicide remains a common law crime.  *Id.*  "[I]f the consent of decedent to the commission of the

---

[5] Plaintiffs' own contemporaneous text messages contradict the current allegations on this point as well.

immoral or illegal act would have been a bar to decedent's right to recover had [he] survived, such consent bars recovery in an action by [his] administrator for [his] wrongful death." *Miller v. Bennett*, 190 Va. 162, 164 (1949); *see also Wackwitz*, 244 Va. at 65-66 (stating that suicide of a deceased with an unsound mind would not be a bar *per se* to the administrator's action). Mr. Ferguson intentionally committed the illegal act of suicide; therefore, barring Plaintiffs' recovery rights as beneficiaries of his Estate.

> v. *Virginia Does Not Recognize a Claim Based on the Facts Alleged.*

Finally, even if Plaintiffs can establish these predicate elements, Virginia does not recognize a claim for encouraging suicide by words alone. Plaintiffs rely upon Va. Code § 8.01-622.1(a). That statute only imposes liability to those who either (a) provide the "physical <u>means</u> by which another person commits or attempts to commit suicide or (b) participate "in a physical <u>act</u> by which another person commits or attempts to commit suicide[.]" Va. Code § 8.01-622.1(a) (emphasis added). Based on the plain language of the statute, Virginia does not impose liability for words that encouraged suicide unless accompanied by a physical act or the provision of the means to commit suicide.[6]

Plaintiffs have not alleged how Blackwell provided physical means for Mr. Ferguson to commit suicide or how Blackwell participated in a physical act by which Mr. Ferguson died by suicide under Va. Code § 8.01-622.1.[7] Plaintiffs' Amended Complaint does not identify any

---

[6] To the extent Virginia – or any other state – enacted legislation aimed at words encouraging suicide that were unaccompanied by actions, that legislation would likely be unconstitutional and violate the First Amendment to the United States Constitution. *See* Ready, Brittani (2017) "Words as Weapons: Electronic Communications that Result in Suicide and the Uncomfortable Truth with Criminal Culpability Based on Words Alone," *Saint Louis University Public Law Review*: Vol. 36 : No. 1, Article 9. Available at: https://scholarship.law.slu.edu/plr/vol36/iss1/9 ("barring speech that 'advises' or 'encourages' suicide is unconstitutional").

[7] Plaintiffs are limited in their showing for purposes of a jurisdictional analysis how Blackwell provided physical means or participated in a physical act regarding Mr. Ferguson's suicide. In *Calder v. Jones*, the United States Supreme Court refused to give weight to First Amendment

actions that fall within the ambit of the cited statute. Plaintiffs' Amended Complaint alleges that Mr. Ferguson engaged in the physical means by retrieving his gun and loading the weapon. Am. Compl. ¶ 54. The Amended Complaint alleges that Mr. Ferguson alone engaged in the physical act by "aim[ing] the gun at his chest and pull[ing] the trigger." Am. Compl. ¶ 58. The allegations against Blackwell at most relate to *words*, not *actions*. Am. Compl. ¶ 86.[8]

Accordingly, Plaintiffs cannot make a *prima facie* showing of personal jurisdiction over Blackwell when she did not cause "tortious injury by an act or omission in this Commonwealth." Va. Code § 8.01-328.1.

### C. Blackwell's Interest in the Estate of William Ferguson Is Not Sufficient to Subject Her to this Court's Jurisdiction.

Seemingly acknowledging that there is no tort claim – which is fatal to Plaintiffs' arguments on jurisdiction and the overall merits – Plaintiffs point to Blackwell's contacts with Virginia. Even if Blackwell owned real property and participate in a parallel lawsuit pending in the commonwealth, neither of those alleged facts[9] would move the needle for the purpose of establishing specific jurisdiction. Plaintiffs' claims in this case do not "arise out of those activities." The claims asserted in this case could not possibly arise out of those activities because those activities occurred <u>after</u> the events that Plaintiffs have sued upon here. *See, e.g., Wolf v. Menh*, No. 1:18-cv-1180, 2019 U.S. Dist. LEXIS 250467, at *6 (E.D. Va. Feb. 5, 2019) (finding

---

concerns in a jurisdictional analysis as it would "needlessly complicate an already imprecise inquiry." 465 U.S. 783, 790 (1984).

[8] The allegation that Blackwell assisted in the "preparation of his suicide note" is false, but it would not rise to the level of an actionable tort.

[9] Blackwell disputes that she "owned an interest in real property in Virginia at least since her stepfather's death on October 14, 2021." For the last two and a half years, Kira Ferguson has been the executrix of the estate. She delayed performing her duties to such an extent that she was recently removed from that role. The estate has not yet been distributed, but even if it had, Blackwell would not have acquired any interest in real property. Mr. Ferguson's Last Will and Testament states that any real estate is to be sold and the proceeds divided among his children. It is disingenuous to claim Blackwell owns real estate in the commonwealth.

Court lacked personal jurisdiction over defendant where the alleged connections to Virginia occurred "before and after the events in the Complaint occurred" and therefore the claims did not arise out of those connections). Therefore, Plaintiffs have "fail[ed] to meet the burden of showing sufficient contacts *relating* to the causes of action." *Williams v. Reynolds*, No. 4:06CV00020, 2006 U.S. Dist. LEXIS 76467, at *11 (W.D. Va. Oct. 20, 2006) (emphasis added).

### D. Traditional Notions of Fair Play and Justice Weigh Against This Court Exercising Personal Jurisdiction Over Blackwell.

Plaintiffs also fail in showing personal jurisdiction over Blackwell is consistent with traditional notions of fair play and substantial justice. Based on Plaintiffs' Complaint, Blackwell's contacts with the Commonwealth include Blackwell "c[oming] to Virginia unexpectedly" and staying with Mr. Ferguson for three days. Am. Compl. ¶¶ 40, 45. *See Boyd v. Green*, 496 F. Supp. 2d 691, 702 (W.D. Va. 2007) (finding no personal jurisdiction over a defendant doctor who resided in Tennessee and his only contacts with Virginia included a few shopping trips and an e-mail account through a Virginia-based provider); *See, e.g., Le Bleu Corp. v. Standard Capital Grp., Inc.*, 11 Fed. Appx. 377, 380-81 (4th Cir. 2001) (upholding the district courts finding that "some mail and telephone calls" between the parties, two visits to the forum state by defendant's employees, and the fact that payment on the contract was mailed from North Carolina, were insufficient to establish purposeful availment).

Blackwell has committed no tort or caused any injury in Virginia that would permit this Court to exercise jurisdiction over her. Blackwell did not come to Virginia to avail herself of the privileges of the commonwealth but instead, as Plaintiffs concede, for the purpose of visiting her stepfather and then taking him to Pennsylvania for a medical examination. *See* Am. Compl. ¶¶39-43. Plaintiffs concede that the reason for Blackwell's visit to the commonwealth was to transport

her stepfather <u>out of the commonwealth</u>, not to avail herself of the privilege of <u>conducting activities</u> <u>within the commonwealth</u>.

Outside of the four-day visit with Mr. Ferguson, Blackwell does not have any meaningful contact with Virginia and never "expressly targeted" Virginia. *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, No. 2:19cv324, 2019 U.S. Dist. LEXIS 225093, at *28 (E.D. Va. Nov. 14, 2019) (finding that the "mere fact that the [plaintiff] was injured [in Virginia] is an insufficient predicate for jurisdiction"). Blackwell is not domiciled in the Commonwealth of Virginia and has not purposefully availed herself of the privileges of the commonwealth. Compelling Blackwell to defend herself in Virginia offends traditional notions of fair play and substantial justice. Plaintiffs' Amended Complaint does not cure any of the defects in personal jurisdiction and this case should therefore be dismissed. *Williams v. Reynolds*, No. 4:06CV00020, 2006 U.S. Dist. LEXIS 76467, at *11 (finding court lacked specific personal jurisdiction over defendant who "visit[ed] family in Virginia only once a year, own[ed] no property in Virginia; and only owned shares in the Virginia corporation at issue" for a limited period).

In contrast, it would offend notions of justice and fair play for this Court to require Blackwell to defend herself in Virginia – 850 miles from her home – against the implausible, tragic, and unhinged conspiracy theories alleged in the Amended Complaint. Plaintiffs (and their counsel) know well that there is neither merit to the claims nor any basis for Blackwell to be haled into a Virginia court.

This is not a case of assisted suicide, wrongful death, or any other recognized, meritorious cause of action. This case is about grief and trauma. Plaintiff Kira Ferguson's grief for the loss of her father is eminently reasonable – as are the denial and anger that accompany her grief. But her grief does not justify this unreasonable lawsuit and the patently implausible (or outright false)

allegations upon which it relies. Plaintiffs know well that Blackwell did not encourage Mr. Ferguson to commit suicide.

Plaintiffs' false and offensive allegation that Blackwell is responsible for the suicide of her stepfather – which appears to be nothing more than an aggressive litigation tactic designed to divert authority from the Court already handling the pending parallel probate action – is legally and factually insufficient. The Court should not permit this family tragedy to be compounded by unnecessary litigation. Rather, the Court should dismiss this case and permit the parties to focus on healing from this trauma.

## <u>CONCLUSION</u>

The Court should dismiss the Complaint against Blackwell because this Court does not have personal jurisdiction over her. She is not a citizen of Virginia and therefore the Court lacks general jurisdiction. Blackwell is not subject to specific jurisdiction either because she has not engaged in any intentional or tortious act that would bring her within this Court's power. The allegations in the Complaint do not rise to the level of an actionable tort, as Blackwell did not owe a duty to Mr. Ferguson, did not breach a duty, and did not cause his death. Virginia simply does not recognize a claim based on the allegations in the Complaint and, even if such a claim existed, Plaintiffs cannot produce evidence to meet their burden on this jurisdictional challenge. Additionally, Blackwell does not own property in Virginia but even if she did, it would be irrelevant for this jurisdictional analysis.

WHEREFORE, for the foregoing reasons, Blackwell respectfully requests this Honorable Court grant this motion to dismiss and dismiss the Complaint against her with prejudice and grant such other and further relief as this Court deems just and proper.

**SUSAN DOONAN BLACKWELL**

By: /s/ Stewart R. Pollock (VSB # 92466)

Kathleen McCauley, Esquire (VSB # 39028)
Stewart R. Pollock, Esquire (VSB # 92466)
MORAN REEVES & CONN PC
1211 E. Cary Street
Richmond, Virginia 23219
Telephone: (804) 421-6250
Facsimile: (804) 421-6251
kmccauley@moranreevesconn.com
spollock@moranreevesconn.com
*Counsel for Susan Doonan Blackwell*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of April, 2024 a true and accurate copy of the foregoing *Motion to Dismiss for Lack of Personal Jurisdiction* was filed electronically on the Western District of Virginia Document Filing System (CM/ECF), served by electronic mail (PDF attachment) and by U.S. mail, postage prepaid, to counsel for plaintiffs and served upon all other counsel of record via electronic mail (PDF attachment) as follows:

Flux J. Neo, Esquire (VSB # 78873)
Flux J. New Law Firm, PLLC
P.O. Box 188
Tazewell, Virginia 24651
Telephone: (276) 988-7996
Facsimile: (276) 644-2622
Office@NewLaw1.com
*Counsel for Plaintiff*

Mary Lynn Tate, Esquire (VSB # 16085)
Tate Law, P.C.
P.O. Box 807
211 West Main Street
Abingdon, Virginia 24212
Telephone: (276) 628-5185
Facsimile: (276) 628-5045
mltate@tatelaw.com
*Counsel for Plaintiff*

Gerard K. Schrom, Esquire (VSB # 39282)
Schrom and Schaffer, P.C.
4 West Front Street
Media, Pennsylvania
Telephone: (610) 565-5050
Facsimile: (610) 565-2980
gschrom@schromandshaffer.com
*Pro Hac Vice Counsel*


**SUSAN DOONAN BLACKWELL**

By: /s/ Stewart R. Pollock (VSB # 92466)

Kathleen McCauley, Esquire (VSB # 39028)
Stewart R. Pollock, Esquire (VSB # 92466)

MORAN REEVES & CONN PC
1211 E. Cary Street
Richmond, Virginia 23219
Telephone: (804) 864-4832
Facsimile:  (804) 421-6251
kmccauley@moranreevesconn.com
spollock@moranreevesconn.com
*Counsel for Susan Doonan Blackwell*